# IN THE COURT OF APPEALS OF IOWA

No. 19-1109
Filed February 19, 2020

**BOB RUSH, BRIAN MEYER, RICK OLSON, MARY MASCHER, ART STAED, LIZ BENNETT, MARK SMITH, JO OLDSON, MARY WOLFE, MARTI ANDERSON, LEON SPIES, and MARTIN A. DIAZ,**
　　Plaintiffs-Appellants,

**vs.**

**GOVERNOR KIMBERLY K. REYNOLDS, GLEN DICKINSON, LESLIE HICKEY, and DAN HUITINK,**
　　Defendants-Appellees.
_____

　　Appeal from the Iowa District Court for Polk County, Sarah Crane, Judge.

　　The plaintiffs appeal the district court's dismissal of their suit challenging Senate File 638. **AFFIRMED.**

　　Bob Rush and Nate Willems of Rush & Nicholson, P.L.C., Cedar Rapids, for appellants.

　　Thomas J. Miller, Attorney General, Jeffrey S. Thompson, Solicitor General, and David M. Ranscht and Thomas J. Ogden, Assistant Attorneys General, Des Moines, for appellees.

　　Heard by Bower, C.J., Mullins, J., Greer, J., Danilson, S.J.*, and Potterfield, S.J.*  May, Schumacher, and Ahlers, JJ., take no part.

　　*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2020).

**MULLINS, Judge.**

Plaintiffs Bob Rush, Brian Meyer, Rick Olson, Mary Mascher, Art Staed, Liz Bennett, Mark Smith, Jo Oldson, Mary Wolfe, Marti Anderson, Leon Spies, and Martin Diaz appeal the district court's dismissal of their lawsuit challenging divisions XIII and XIV of Senate File (SF) 638. The individual plaintiffs are all Iowa residents and are a mix of lawyers, commissioners serving or who have served on the State Judicial Nominating Commission (the Commission),[1] and legislators— with some individuals falling into more than one of those categories.

In the underlying suit, the plaintiffs challenged SF 638 as unconstitutional, maintaining it violated article III, section 29 of the Iowa Constitution because it contained more than one subject and failed to include in its title the provisions regarding changes to the Commission (division XIII) and the term length and election of the Chief Justice of the Iowa Supreme Court (division XIV) and violated the separation of powers required in article III, section 1 of the Iowa Constitution. The district court dismissed their suit, finding the plaintiffs lacked standing, and did not reach the merits of their claims.

On appeal, the plaintiffs assert specific arguments regarding standing for each group—lawyers, commissioners, and legislators. In the alternative, they argue we should apply the exception to standing and waive the standing requirement for all of them because the claimed violations of the state constitution, which occurred in the passage of the legislation, are of great public importance. If we determine they have standing and remand to the district court, the plaintiffs ask

---

[1] Martin Diaz was a commissioner until his term ended on June 30, 2019, at which point he was replaced by Leon Spies.

that we grant a temporary injunction to stay the implementation of the challenged portions of SF 638 until the district court can rule on the underlying merits of their claims.

The defendants are Governor Kimberly Reynolds, Director of the Legislative Services Agency Glen Dickinson, Iowa Code Editor Leslie Hickey, and Dan Huitink, whom Governor Reynolds appointed to the Commission on May 10, 2019, based on the law change.[2] They respond that the district court correctly determined the plaintiffs lack standing and ask that we affirm.

## I.      Background Facts and Proceedings

SF 638, an appropriations bill, was introduced in the Iowa Senate on April 23, without divisions XIII and XIV.[3] The senate passed the bill a few days later, on April 26.[4] It was then messaged to the Iowa House of Representatives.

At approximately 12:30 a.m. on the morning of April 27, a representative filed House File (HF) 1321, an amendment to SF 638.[5] The amendment included a division called, "Judicial Nominating Commission Modernization," which, if passed, would increase the number of commissioners appointed by the governor to the Commission from eight to nine, remove a justice from the Iowa Supreme Court from serving on the Commission, and provide for the Commission to elect its own chairperson (previously the justice served as the chair). The proposed

---

[2] The plaintiffs sued the defendants in their official capacities.

[3] Iowa Sen. J., 88th Gen. Assembly, Reg. Sess., 1073 (Apr. 23, 2019), https://www.legis.iowa.gov/docs/publications/SJNL/20190423_SJNL.pdf.

[4] Iowa Sen. J., 88th Gen. Assembly Reg. Sess., 1142–44 (Apr. 26, 2019), https://www.legis.iowa.gov/docs/publications/SJNL/20190426_SJNL.pdf.

[5] Iowa H.J., 88th Gen. Assembly, Reg. Sess., 1053, 1055–56 (Apr. 26, 2019), https://www.legis.iowa.gov/docs/publications/HJNL/20190426_HJNL.pdf.

amendment also included a division titled, "Chief Justice Selection." This division would shorten the term of the Chief Justice of the Iowa Supreme Court from eight years to two years and require that the next vote for chief justice occur in January 2021.

The house began debating SF 638 at approximately 9:30 a.m. on April 27.[6] At some point during the discussion, the representative who filed HF 1321 offered the amendment. Representative Wolfe—a named plaintiff and appellant—raised a point of order that the amendment was not germane to SF 638.[7] The speaker of the house "ruled the point well taken and amendment H-1321 not germane."[8] The house then voted to suspend the rules and consider the amendment. By 11:25 a.m., the house adopted HF 1321 and passed the amended version of SF 638.[9] The title of the bill was not amended. None of the legislator plaintiffs voted for the suspension of the rules or the amended bill. The bill was immediately messaged back to the senate.

The senate concurred on the amendments made by the house and passed SF 638 on or about 2:22 p.m. the same day.[10]

Governor Reynolds signed SF 638 into law on May 8, 2019. It is titled, "An Act Relating to State and Local Finances by Making Appropriations, Providing for Legal and Regulatory Responsibilities, Providing for Other Properly Related

---

[6] Iowa H.J., 88th Gen. Assembly, Reg. Sess., 1057 (Apr. 27, 2019), https://www.legis.iowa.gov/docs/publications/HJNL/20190427_HJNL.pdf.
[7] *Id.* at 1060.
[8] *Id.*
[9] *Id.* at 1062–63, 1065.
[10] Iowa Sen. J., 88th Gen. Assembly, Reg. Sess., 1179–81 (Apr. 27, 2019), https://www.legis.iowa.gov/docs/publications/SJNL/20190427_SJNL.pdf.

Matters, and including Effective Date, Applicability, and Retroactive Applicability Provisions." The signed bill includes divisions regarding appropriations for nonpublic school transportation, suspending funding for school instructional support, and decreasing Area Education Agency funding (division I); an appropriation for training and equipment for fire fighters (division II); a reporting requirement for the office of the ombudsmen (division III); provisions correcting other legislation (division IV); an appropriation for flood mitigation and flood recovery (division V); requirements pertaining to the state budget process (division VI); the creation of blackout special registration plates (division VII); provisions regarding the regulation of gambling (division VIII); a section involving public utilities (division IX); a requirement that the board of regents submit a capital projects report (division X); a section regarding watershed management authorities (division XI); amendments to legislation concerning state and local elections (division XII); changes to the Commission (division XIII); and "Chief Justice Selection" (division XIV). *See generally* 2019 Iowa Acts ch. 89.

On May 10, Governor Reynolds implemented the new law and appointed Huitink to fill the newly created, ninth appointed position on the Commission.

The plaintiffs filed their lawsuit on May 15. They alleged SF 638 violated article III, section 29 of the Iowa Constitution because the bill contained more than a single subject and the title failed to include an accurate description of the subject matter of the bill. They also alleged it violated article III, section 1 of the Iowa Constitution by "dictating to a separate and co-equal branch of government how its leadership ([c]hief [j]ustice) should be selected and the term of office" and maintained it was a "legislative encroachment on judicial powers." They asked for

injunctive relief invalidating the changes in the law "that affected the selection of the judicial nominating commissioners and selection and term of office of the [c]hief [j]ustice" and enjoining the defendants from enforcing or utilizing the provisions.

The defendants responded by filing a motion to dismiss, asserting all plaintiffs lacked standing "because the petition does not allege facts showing that the substantive provisions in" divisions XIII and XIV "of SF 638 have injuriously affected or will injuriously affect any" plaintiff.

A combined hearing on the plaintiffs' motion for temporary injunction and the defendants' motion to dismiss for lack of standing took place June 24. The plaintiffs generally argued the importance of the constitutional requirement for single subject matter as a safeguard against surprise, fraud, and deception in the legislative process.

A few days later, the district court entered a written ruling granting the defendants' motion to dismiss and denying the plaintiffs' motion for a temporary injunction. The plaintiffs appeal.

## II. Discussion

The question before us is whether any subgroup of plaintiffs has standing to challenge divisions XIII and XIV of SF 638. Alternatively, the plaintiffs ask us to apply the exception to standing because their claims are ones of "great public importance." If we determine a subgroup has standing to pursue the merits of the issues or we waive the standing requirement, we must then consider whether the plaintiffs have proven the need for a temporary injunction while the matter is remanded to the district court for a ruling on the merits.

A. Standing

The district court concluded none of the three subgroups of plaintiffs has standing to challenge divisions XIII and XIV of SF 638 and granted the defendants' motion to dismiss. We review questions of standing and rulings denying a motion to dismiss for correction of errors at law. *Homan v. Branstad*, 864 N.W.2d 321, 327 (Iowa 2015) (standing); *Madden v. City of Iowa City*, 848 N.W.2d 40, 44 (Iowa 2014) (motions to dismiss). "A motion to dismiss should only be granted if the allegations in the petition, taken as true, could not entitle the plaintiff to any relief." *King v. State*, 818 N.W.2d 1, 9 (Iowa 2012) (quoting *Sanchez v. State*, 692 N.W.2d 812, 816 (Iowa 2005)). Denying a motion to dismiss is appropriate unless the petition "on its face shows no right of recovery under any state of facts." *Ritz v. Wapello Cty. Bd. of Supervisors*, 595 N.W.2d 786, 789 (Iowa 1999) (quoting *Schaffer v. Frank Moyer Constr., Inc.*, 563 N.W.2d 605, 607 (Iowa 1997)). "[W]e accept as true the petition's well-pleaded factual allegations, but not its legal conclusions." *Shumate v. Drake Univ.*, 846 N.W.2d 503, 507 (Iowa 2014).

Standing refers to "[a] party's right to make a legal claim or seek judicial enforcement of a duty or right." *Standing, Black's Law Dictionary* (11th ed. 2019). The doctrine of standing "not only serves to limit which persons may bring a lawsuit, but it has developed into a larger cultural doctrine, concerned with the role of the courts in a democratic society." *Godfrey v. State*, 752 N.W.2d 413, 417–18 (Iowa 2008) (internal quotation marks and citation omitted). Iowa's doctrine of standing "parallels the federal doctrine, even though standing under federal law is fundamentally derived from constitutional strictures not directly found in the Iowa Constitution." *Id.* at 418.

The issue of standing is wholly distinct from the merits of the underlying claims. *See Alons v. Iowa Dist. Ct.*, 698 N.W.2d 858, 864 (Iowa 2005) ("Even if the claim could be meritorious, the court will not hear the claim if the party bringing it lacks standing."). Stated another way, "Whether litigants have standing does not depend on the legal merits of their claims, but rather whether, if the wrong alleged produces a legally cognizable injury, they are among those who have sustained it." *Citizens for Responsible Choices v. City of Shenandoah*, 686 N.W.2d 470, 475 (Iowa 2004).

Iowa's "standing inquiry has two distinct prongs, each of which a plaintiff must satisfy to proceed with a claim. 'Our cases have determined that a complaining party must (1) have a specific personal or legal interest in the litigation and (2) be injuriously affected.'" *Horsfield Materials, Inc. v. City of Dyersville*, 834 N.W.2d 444, 452 (Iowa 2013) (citation omitted). "The first element—the plaintiff has a specific personal or legal interest—is aligned with the general concept of standing that a party who advances a legal claim must have a special interest in the challenged action, 'as distinguished from a general interest.'" *Godfrey*, 752 N.W.2d at 419 (citation omitted). This allows individuals to bring a case "involving actions to vindicate the public interest through challenges to governmental action" so long as the litigant "allege[s] some type of injury different from the population in general." *Id.* at 420. "The second requirement—the plaintiff must be injuriously affected—means the plaintiff must be 'injured in fact.'" *Id.* (citation omitted). "'Injury in fact' reflects the statutory requirement that a person be 'adversely affected' or 'aggrieved,' and it serves to distinguish a person with a direct stake in the outcome of a litigation—even though small—from a person with a mere interest

in the problem." *United States v. Students Challenging Regulatory Agency Procedures*, 412 U.S. 669, 689 n.14 (1973). "To satisfy the second element, the injury cannot be 'conjectural' or 'hypothetical,' but must be 'concrete' and 'actual or imminent.'" *Hawkeye Foodservice Distrib., Inc. v. Iowa Educators Corp.*, 812 N.W.2d 600, 606 (Iowa 2012) (altered for readability) (citations omitted).

### 1. Commissioners

The plaintiffs must "establish a personal injury or stake in the application of the challenged statute" in order to establish standing. *Godfrey*, 752 N.W.2d at 424. The commissioner-plaintiffs maintain they have standing to challenge SF 638 because the act dilutes their vote on the Commission in relation to the appointed commissioners' votes. The plaintiffs maintain their stake in the application of the statute stems from (1) the resulting lack of balance between the two groups of commissioners and (2) a new voting method, apparently adopted by the newly-configured Commission (after the law change), which allows the appointed commissioners to "entirely extinguish the votes of elected attorney members."

In support of their argument that the numbers of elected and appointed commissioners are required to be in balance, the plaintiffs rely on article V, section 16 of the Iowa Constitution, which provides in part:

> There shall be a state judicial nominating commission. Such commission shall make nominations to fill vacancies in the supreme court. Until July 4, 1973, and thereafter unless otherwise provided by law, *the state judicial nominating commission shall be composed and selected as follows: There shall be not less than three nor more than eight appointive members, as provided by law, and an equal number of elective members on such commission, all of whom shall be electors of the state.* The appointive members shall be appointed by the governor subject to confirmation by the senate. The elective members shall be elected by the resident members of the bar of the state. The judge of the supreme court who is senior in length of

service on said court, other than the chief justice, shall also be a member of such commission and shall be its chairman.

(Emphasis added.) The plaintiffs maintain that balance between the appointed and elected commissioners is constitutionally mandated and may be changed only by an amendment to the Iowa Constitution. The defendants argue that the language, "Until July 4, 1973, and thereafter unless otherwise provided by law," allows the legislature to pass laws affecting the balance of the commission.

On this appeal, we will not address plaintiffs' arguments that the Iowa Constitution requires the two groups of commissioners be balanced because that issue goes to the merits of the action rather than to whether plaintiffs have standing. The determination of whether a recomposition of the commission can be accomplished by statute or only by an amendment to the constitution lends nothing to plaintiffs' claims of standing unless the commissioner-plaintiffs' second argument, that their vote has been diluted, serves to establish standing.

So, we next consider the commissioner-plaintiffs' argument their votes on the Commission have been diluted because before the law change, each group—the eight appointed commissioners and the eight elected commissioners—had 8/17 of the possible votes (approximately 47%). They compare this to the current iteration of the Commission, where the appointed members have 9/17 votes (approximately 53%) and the elected commissioners have 8/17. They assert standing as individuals (not as the group of elected commissioners), claiming the Supreme Court has "long recognized that a person's right to vote is 'individual and personal in nature'" and "[a]ccordingly, individuals must show 'disadvantage to themselves as individuals' to establish standing." *See Gill v. Whitford*, 138 S. Ct.

1916, 1929 (2018). But each individual commissioner had one vote both before and after the law change, and each vote continues to have the same weight or value as the other sixteen votes on the Commission. No individual commissioner's vote has been diluted. Moreover, in the case the plaintiffs cite for support, in which voter-plaintiffs alleged purposeful partisan gerrymandering was diluting the strength of their individual votes, the Supreme Court did not find the plaintiffs had standing to bring their suit. *Id.* at 1930. The commissioners-plaintiffs' claim of vote dilution does not support their arguments for standing.

While claiming they have standing as individuals, the commissioner-plaintiffs also argue their collective votes have been diluted because of the Commission's newly-adopted voting method, which outlines the "successive voting method" and provides that if nine or more commissioners vote for the same three applicants, "the Commission's work is finished." The claimed injury here relies on the idea that all nine appointed members—and only those nine appointed members—will, sometime in the future, vote together and "extinguish" the votes of all elected members. We need not determine whether this would result in an injury of the type to confer standing on these plaintiffs; the record before us is devoid of any evidence this has occurred, and we cannot say with any certainty that it will occur in the future. The claimed injury is at this point too "'conjectural;' or 'hypothetical'" rather than "'concrete' and 'actual or imminent.'" *Godfrey*, 752 N.W.2d at 423 (citation omitted). "There is nothing to show that the future injury is not merely theoretical." *Id.*

We agree with the district court that the commissioner-plaintiffs have not established they have standing to challenge the makeup of the Commission.

### 2.     Lawyers

The lawyer-plaintiffs admit their claim of standing "is derivative of [the] attorney commissioners' standing."  Their argument for standing is based on the same injury as the commissioner-plaintiffs alleged.  The lawyers argue that while attorneys in Iowa elected eight of the seventeen commissioners both before and after the law change, because the balance of elected and appointed commissioners has changed, the votes of the eight lawyer-commissioners are worth less than they were before the law change.

For all the same reasons we concluded the commissioners do not have standing, we also find the lawyers do not have standing.

### 3.     Legislators

The legislator-plaintiffs' theory of injury is different from that of the commissioners and lawyers; they do not argue that the enforcement of SF 638 injures them.  Rather, they maintain the process of enacting SF 638 injured them because it "forced [them] to forsake one constitutional right in order to exercise other constitutional rights and duties."  More specifically, the legislator-plaintiffs note that article III, section 29 of the Iowa Constitution requires that bills contain a single subject and that the subject be expressed in the title and argue they were not afforded an opportunity to vote on SF 638 in a manner that complied with the Iowa Constitution.  Legislator Wolfe raised the issue of germaneness to her colleagues in the house during the discussion of divisions XIII and XIV (then HF 1321); the speaker of the house agreed that the proposed amendment was not germane to SF 638.  Despite a ruling that the amendments were not germane, the house continued to debate the amendment and then held a vote to determine if

the amendment should be added to the bill. The amendment passed, and then the amended SF 638 passed as well. The title was not amended.

We have found only one Iowa case in which a state legislator challenged the enactment of a bill for violating article III, section 29 of the Iowa Constitution, and it is silent on the issue of standing. *See Miller v. Bair*, 444 N.W.2d 487, 487 (Iowa 1989). Also, in *Rants v. Vilsack*, a handful of legislators challenged the governor's exercise of an item veto in a bill they passed; our supreme court considered the merits of the issue without explicitly considering whether the group of legislators had standing. *See generally* 684 N.W.2d 193 (Iowa 2004). We have found no Iowa case dealing directly with the issue of standing for individual legislators.

But other "[c]ourts have grappled with the complicated question of when a legislative body, or a group of legislators from that body, has standing to sue." *State by & through Tenn. Gen. Assembly v. United States Dep't of State*, 931 F.3d 499, 507 (6th Cir. 2019). "Like all standing questions, that analysis begins with the requirement of a concrete and particularized injury that is actual or imminent." *Id.* "An injury satisfies these criteria when the injury affects the plaintiff in a personal and individual way, and actually exists, even if the injury is intangible." *Id.*

As the defendants point out, the injury alleged by the legislator-plaintiffs is not unique or personal to them but instead is true of all members of the Iowa legislature—each member was ultimately asked to vote on SF 638 after the HF 1321 amendments were added. Thus, the injury alleged by the legislator-plaintiffs is an institutional injury. *See Kerr v. Hickenlooper*, 824 F.3d 1207, 1214 (10th Cir. 2016) ("Institutional injuries are those that do not 'zero in on any individual

member.'  Instead, an institutional injury is 'widely dispersed' and 'necessarily impacts all members of a legislature equally.'" (altered for readability) (quoting *Arizona State Legislature v. Arizona Indep. Redistricting Comm'n*, 135 S. Ct. 2652, 2664 (2015))).  "Individual members [of the legislature] lack standing to assert the institutional interests of a legislature."  *Virginia House of Delegates v. Bethune-Hill*, 139 S. Ct. 1945, 1953 (2019).[11]  Though the Supreme Court has found standing when whole voting blocs, *see Coleman v. Miller*, 307 U.S. 433, 437–38 (1939), or when the state house and senate acting together, *see Arizona State Legislature*, 135 S. Ct. at 2659, 2665, alleged an institutional injury, the Court has not found standing when individual legislators allege institutional injury.  Relying on the general principle that Iowa's doctrine of standing parallels the federal doctrine, *Godfrey*, 752 N.W.2d at 418, the legislator-plaintiffs' allegation of an institutional injury is not sufficient to confer standing.

Still, individual legislators may have standing if their alleged injury is one of vote nullification.  "An apparent exception to the general rule against legislative standing arises when the legislators are suing on a vote-nullification theory and allege that if their votes had been given effect, those votes would have been sufficient to defeat or enact specific legislation."  *See Crawford v. United States Dep't of Treasury*, 868 F.3d 438, 453–54 (6th Cir. 2017); *see also Tenn. Gen. Assembly*, 931 F.3d at 501 ("*Coleman at most* held that 'legislators whose votes would have been sufficient to defeat (or enact) a specific legislative Act have

---

[11] We recognize "the Court of Appeals for the District of Columbia Circuit "has held that Members of Congress may have standing when they . . . assert injury to their institutional power as legislators."  *Raines v. Byrd*, 521 U.S. 811, 820 n.4 (1997) (providing cases).

standing to sue if that legislative action goes into effect (or does not go into effect), on the ground that their votes have been completely nullified.'" (quoting *Raines*, 521 U.S. at 823)). Here, the legislator-plaintiffs claim we can find "extinguishment of action taken by a legislative majority" by implication. They rely on the fact that bills to change the Commission were introduced in both the house (HF 503)[12] and senate (SF 237)[13] before the proposed amendment to SF 638 was brought without either being enacted.

But the failure of an earlier, different bill to pass legislative muster does not show vote nullification. The legislator-plaintiffs have not alleged facts that would support a finding their votes were nullified. *See Raines*, 521 U.S. at 824 ("They have not alleged that they voted for a specific bill, that there were sufficient votes to pass the bill, and that the bill was nonetheless deemed defeated. In the vote on the Act, their votes were given full effect. They simply lost that vote.").

The legislator-plaintiffs have not established that they have standing.

B.     Exception to Standing Requirement

In the alternative, the plaintiffs ask that we apply the exception to the standing requirement because the constitutional violations in the process of enacting the legislation rise to the level of great public importance. *See Godfrey*, 752 N.W.2d at 424. The district court declined to do so, concluding, "Resolution

---

[12] Iowa H. File 503, 88th Gen. Assembly, Reg. Sess. (Feb. 21, 2019), https://www.legis.iowa.gov/legislation/BillBook?ga=88&ba=HF%20503.
[13] Iowa Sen. File 237, 88th Gen. Assembly, Reg. Sess. (Mar. 13, 2019), https://www.legis.iowa.gov/legislation/BillBook?ga=88&ba=HF%20503.

of the single-subject or title question is not the type of constitutional issue to require waiver of standing."

### 1. Standard of review

The plaintiffs maintain that we should review for correction of errors at law as that is our general standard to review the court's ruling on a motion to dismiss. *See, e.g.*, *Turner v. Iowa State Bank & Tr. Co.*, 743 N.W.2d 1, 3–4 (Iowa 2007). The defendants argue the court *may* waive standing and suggest we should review the court's exercise of discretion for an abuse thereof. *See, e.g.*, *Alcala v. Marriott Int'l, Inc.*, 880 N.W.2d 699, 707–08 (Iowa 2016) (clarifying standard of review, noting that when the court is required to do something, the review is for errors at law, but when the act has a discretionary component, the review is for an abuse of discretion). Our court has been asked to review the district court's decision to not apply the exception to waive standing a number of times; in reviewing those decisions, we have never applied an abuse-of-discretion standard. *See, e.g.*, *George v. Schultz*, No. 11-0691, 2011 WL 6077561, at *2 (Iowa Ct. App. Dec. 7, 2011). Here, we review the district court's decision for correction of errors at law.

Because this appeal is before us following a motion to dismiss, we view the "well-pled facts of the petition in the light most favorable to the plaintiff[s], resolving any doubts in the plaintiff's favor." *Turner*, 743 N.W.2d at 3. "[A]ll well-pleaded facts are taken to be true in deciding the issue." *Mormann v. Iowa Workforce Dev.*, 913 N.W.2d 554, 564 (Iowa 2018). Traditionally, a "motion to dismiss can neither rely on facts not alleged in the petition (except those of which judicial notice may be taken) nor be aided by an evidentiary hearing." *Berger v. Gen. United Grp., Inc.*, 268 N.W.2d 630, 634 (Iowa 1978). Additionally,

> [u]pon the theory that legislative journals are public records, since they are printed in pamphlet form and published and distributed, . . . the courts may take judicial notice of legislative proceedings as recorded therein to the same extent that they take judicial notice of statutes of the legislative body.

*Socony Vacuum Oil Co. v. State*, 170 N.W.2d 378, 382 (Iowa 1969) (citation omitted). Unusually, in the present case, affidavits and other materials were submitted by the parties, argued before the district court, considered by the district court, and included in our appeal record without objection. In fact, the case was briefed and argued to us in the same manner. That is the case before us for review. We cannot change the record that was presented and considered by the district court and which the parties—without objection—have asked us to consider in this appeal. After our review of the record, we have considered the parts of the record that are relevant to the limited issues before us.

### 2. Godfrey *and plaintiffs' claims*

In *Godfrey*, the plaintiff challenged legislation as violating the single-subject rule of article III, section 29 of the Iowa Constitution. 752 N.W.2d at 416. The substance of the challenged legislation involved a provision that changed workers' compensation benefits for successive injuries. *Id.* at 417. On appeal, our supreme court ruled the plaintiff lacked standing to challenge the law, as her claim that the enforcement of it would affect her if and when she suffered a successive injury was too uncertain and lacked immediacy to constitute an injury in fact. *Id.* at 422–23. But the court considered the plaintiff's request that it "create an exception to our standing doctrine that waives the requirement of standing in exceptional circumstances involving issues of great public importance" and concluded that "our doctrine of standing in Iowa is not so rigid that an exception to the injury

requirement could not be recognized for citizens who seek to resolve certain questions of great public importance and interest in our system of government." *Id.* at 424–25.

The supreme court declined to waive standing in *Godfrey*, but first it outlined the principles to consider when a plaintiff asks that the exception be invoked. We begin with the principle "that the branch of government with the ultimate responsibility to decide the constitutionality of the actions of the other two branches of government should only exercise that power sparingly." *Id.* at 425. The purpose of standing is to "ensure litigants are true adversaries, which theoretically allows the case to be presented to the court in the most effective manner," "that the people most concerned with an issue are in fact the litigants of the issue," and "that a real, concrete case exists to enable the court to feel, sense, and properly weigh the actual consequences of its decision." *Id.*

Otherwise, we base our determination on whether standing should be waived on the issue presented by the plaintiffs. *See id.* at 426. Like in *Godfrey*, the plaintiffs here allege a violation of article III, section 29 of the Iowa Constitution, which provides in part:

> Every act shall embrace but one subject, and matters properly connected therewith; which subject shall be expressed in the title. But if any subject shall be embraced in an act which shall not be expressed in the title, such act shall be void only as to so much thereof as shall not be expressed in the title.

This provision has four requirements. *State v Mabry*, 460 N.W.2d 472, 474 (Iowa 1990). "First, the act may have only one subject together with matters germane to it. Second, the title of the act must contain the subject matter of the act." *Id.* (citations omitted). "Third, any subject not mentioned in the title is invalid. Last,

an invalid subject in the act does not invalidate the remaining portions that are expressed in the title." *Id.* (citations omitted).

Unlike in *Godfrey,* the plaintiffs before us challenge both the single-subject requirement and the requirement the subject of a bill be expressed in the title. *See* 752 N.W.2d at 426, 428 (exploring the "two separate provisions derived from independent historical bases" and noting, "Importantly, [the plaintiff] does not challenge the title requirement of article III, section 29"). The single-subject requirement "exists to 'facilitate concentration on the meaning and wisdom of independent legislative proposals or provisions.'" *Id.* at 426 (citations omitted). This requirement

> forces each legislative proposal to stand on its own merits by preventing the 'logrolling' practice of procuring diverse and unrelated matters to be passed as one 'omnibus' due to the consolidated votes of the advocates of each separate measure, when no single measure could have passed on its own merits.

*Id.* (altered for readability) (citation and footnote omitted). The requirement that the subject of the bill be expressed in the title "is to provide reasonable notice of the purview of the act to the legislative members and to the public." *Id.* at 426–27. This requirement "ultimately serves to prevent surprise and fraud from being visited on the legislature and the public." *Id.* at 427. "Thus, the title requirement is directed more to the integrity of the legislative process by preventing laws from being surreptitiously passed with 'provisions incongruous with the subject proclaimed in the title.'" *Id.* (citation omitted).

Although the plaintiff in *Godfrey* was unable to fall within the exception to standing, the court in *Godfrey* concluded the plaintiff's limited challenge—the single-subject requirement but not the title requirement of article III, section 29 of

the Iowa Constitution—"play[ed] a significant role in deciding whether or not to waive standing." 752 N.W.2d at 427. The court characterized a challenge to the single-subject requirement as one seeking "to uphold the internal workings of the legislative process that promotes and encourages legislators to understand and debate the merits of each separate subject." *Id.* Because the plaintiff in *Godfrey* only sought to uphold the internal processes of the legislature, the court relied on its "hesitan[ce] to act when asked to resolve disputes that require [the court] to decide whether an act taken by one of the other branches of government was unconstitutional" in deciding to not waive standing. *Id.* The court also stated, "Importantly, Godfrey does not challenge the title requirement of article III, section 29." *Id.*

The claims before us differ from those in *Godfrey*. First, in *Godfrey*, the court noted the fact that "there is no allegation that the provisions were purposely placed into one bill to engage in logrolling." *Id.* But here, the plaintiffs do allege purposeful logrolling. They claim support for their allegation, as earlier bills with similar changes to the Commission had come before both the house and the senate without being enacted.[14] Plus, one of the named legislator-plaintiffs, Representative Wolfe, raised the issue with her colleagues in the house when she objected to the possible addition of divisions XIII and XIV for not being germane to the bill. The speaker of the house agreed with the objection, but the house voted

---

[14] Iowa H. File 503, 88th Gen. Assembly, Reg. Sess. (Feb. 21, 2019), https://www.legis.iowa.gov/docs/publications/LGI/88/HF503.pdf; Iowa Sen. File 237, 88th Gen. Assembly, Reg. Sess. (Mar. 13, 2019), https://www.legis.iowa.gov/legislation/BillBook? ga=88&ba=sf 237.

to suspend procedure and consider the amendment anyway.[15]  The legislature may suspend enforcement of its rules, but it may not ignore or suspend the Iowa Constitution.

Second, the plaintiffs here also challenge the title requirement and maintain they are seeking "to vindicate any perpetration of fraud or deceit on the legislature or the public."  *Cf. id.* (noting "Godfrey does not seek to vindicate any perpetration of fraud or deceit on the legislature or the public that can occur by infirmities in the title of a bill").  They claim the amendment to SF 638 to include divisions XIII and XIV, which were not reflected in the title,[16] coupled with the short period of time between the amendment and passing of the bill, prevented constituents from being informed of and weighing in to their legislators about the provisions regarding the change to the Commission and term and election of the chief justice.

The court in *Godfrey* described the purpose of the title provision in the Iowa Constitution stating, "The provision ultimately serves to prevent surprise and fraud from being visited on the legislature and the public."  *Id.*  The court also stated, "Godfrey does not seek to vindicate any perpetration of fraud or deceit on the legislature or the public that can occur by the infirmities in the title of a bill."  *Id.*  The court also noted that Godfrey's lack of an allegation "that implicates fraud, surprise, personal and private gain, or other such evils . . . diminishes our need to intervene."  *Id.*  The court added, "The absence of a claimed violation of the title

---

[15] Iowa H.J., 88th Gen. Assembly, Reg. Sess., 1057 (Apr. 27, 2019), https://www.legis.iowa.gov/docs/publications/HJNL/20190427_HJNL.pdf.

[16] As noted, the title of the enacted bill is "An Act Relating to State and Local Finances by Making Appropriations, Providing for Legal and Regulatory Responsibilities, Providing for Other Properly Related Matters, and including Effective Date, Applicability, and Retroactive Applicability Provisions."

requirement also diminishes the importance of the constitutional issue presented." *Id.* at 428. Godfrey only raised the single-subject rule violation without evidence of fraud or deceit, and the court stated: "We believe this limited challenge by Godfrey plays a significant role in deciding whether or not to waive standing." *Id.* at 427.

Contrasted to the allegations raised in *Godfrey*, the plaintiffs allege the title requirement violation constituted fraud and deceit upon the public and other members of the legislature. *See id.* And the plaintiffs allege there is evidence a violation of the single-subject rule resulted in logrolling constituting fraud, deceit, and surprise. The two rule requirements "are separate constitutional principles" but "they operate together to prevent greater harm than when the single subject requirement is the only violation claimed." *Id.* at 428. The announcements in *Godfrey* are persuasive authority that a violation of the title requirement along with the claimed violation of the single-subject rule could constitute an issue of great public importance, and, in such circumstance, standing could be waived or an exception to the standing requirement be recognized. But *Godfrey* does not say the plaintiff would have succeeded in obtaining a waiver of standing if she had simply pled the case differently. The holding is limited to the record and claims the supreme court had before it.

We have already concluded that no individual plaintiff has standing, notwithstanding a variety of claims by different groupings of the plaintiffs. Although the legislator-plaintiffs do not have traditional standing, we will consider one of their claims in the context of whether it rises to the level of great public importance and

whether we should waive standing requirements. They claim no other relief is available to the plaintiffs, and thus their claim is of great public importance.

### 3. Waiver of standing and separation of powers

"[S]tanding is built on a single basic idea—the idea of separation of powers." *Allen v. Wright*, 468 U.S. 737, 752 (1984), *abrogated on other grounds by Lexmark, Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S.118, 129 (2014). We must take a measured and careful approach to show "the greatest respect for the other two branches of government and exercise our power with the greatest of caution." *Godfrey*, 752 N.W.2d at 425. We should exercise our power sparingly and avoid unnecessary interference "with the policy and executory functions of the two other properly elected branches of government." *Id.* Our authority "to determine the constitutionality of the acts of the other branches of government does not exist as a form of judicial superiority, but is a delicate and essential judicial responsibility found at the heart of our superior form of government." *Id.*[17]

---

[17] During his Condition of the Judiciary address to a joint convention of the Iowa General Assembly on January 15, 2020, David S. Wiggins, the Acting Chief Justice of the Iowa Supreme Court repeated that theme:

> We have the greatest respect for you and the state's other public officials. This respect is not only derived from your devoted service but because you speak and act for the people of Iowa. Our government was set up for you to be their voice. Courts are different. We too were set up to speak, but in a more limited way. We resolve legal disputes brought to us by Iowans by applying the law, including the values and principles found in the people's Constitution. The independence of the courts from the political branches is not a divide but our very strength as a state and as a nation.

Iowa H.J., 88th Gen. Assembly, Reg. Sess., 75 (Jan. 15, 2020), https://www.legis.iowa.gov/docs/publications/HJNL/20200115_HJNL.pdf.

"Relaxation of standing requirements is directly related to the expansion of judicial power." *United States v. Richardson*, 418 U.S. 166, 188 (1974) (Powell, J., concurring). As the *Godfrey* court noted,

> While standing generally limits the exercise of our powers except as to matters that are "strictly judicial in nature," we become especially hesitant to act when asked to resolve disputes that require us to decide whether an act taken by one of the other branches of government was unconstitutional. Without an individual injury by the complainant under such circumstances, we risk assuming "a position of authority" over the acts of another branch of government. We must avoid such a result.

752 N.W.2d at 427 (citations omitted).

In a review of alternative standing approaches in the United States, one author noted that public interest standing "stands alone in offering no relation to an injury-in-fact." M. Ryan Harmanis, *States' Stances on Public Interest Standing*, 76 Ohio St. L.J. 729, 738 (2015). He continued,

> There is an inherent danger in allowing the judiciary to create jurisdiction for itself as a way to check the other branches of government. When used to enforce a public duty, public interest standing functions as a mechanism to hold elected officials accountable to the people. Such a function is redundant and unnecessary for one obvious reason: elected officials are accountable to citizens at the polls. Thus, for a general grievance harming all of the public, the public itself should be charged with holding officials accountable. All state officials take an oath to uphold their state's constitution, and if citizens believe these officials fail in their duties, the next election provides an appropriate and adequate forum to voice their complaints.

*Id.* at 743 (footnotes omitted).

Justiciability is a concept that covers a number of areas in which the court declines to resolve questions parties seek to adjudicate. *Flast v. Cohen*, 392 U.S.

83, 95 (1968).[18]  Examples include political questions, advisory opinions, issues that are moot, and lack of standing.  *Id.*; *see also Alons*, 698 N.W.2d at 867.  In the end, these plaintiffs focus on the political question of how judges and the Chief Justice of the Iowa Supreme Court should be selected.[19]

Another author discussed many of the tensions involved with addressing the actions of the legislature.  William J. Yost, Note, *Before a Bill Becomes a Law—Constitutional Form*, 8 Drake L. Rev. 66 (1958).

> The purposes of such a constitutional provision [such as the single-subject rule], according to writers and courts, are to prevent 'log-rolling' and unfavorable legislation riding in with more favorable legislation, . . . to prevent surprise or stealth when legislators are not informed, and to fairly apprise the people of the subjects being considered.

*Id.* at 67 (footnote omitted).  "Such objectives are very laudable but, in individual cases, they are counterbalanced by a lack of desire by courts to declare laws unconstitutional, to make validity turn on a somewhat ritualistic and technical argument."  *Id.*  Such restraint was summarized by an early Iowa court:

> To sustain the objection in the case at bar, would be to hold a doctrine which would render null a large portion of the legislation of the state, and render future legislation so inconvenient as to make it nearly impracticable.  Such a construction, we think, is neither demanded nor warranted.

*State ex rel. Weir v. Cty. Judge of Davis Cty.*, 2 Iowa 280, 285 (1855); *accord Cook v. Marshall Cty.*, 93 N.W. 372, 378 (Iowa 1903) (holding void for unconstitutionality

---

[18] Justiciability is the term of art employed to give expression to the dual limitation placed upon federal courts by the case-and-controversy doctrine.  *See, e.g., Flast*, 392 U.S. at 95 (discussing the concept of jusiticiability).

[19] It is worth noting there are no requests to overturn the other topics included in SF 638, such as the blackout registration plate act, only the divisions related to the courts.

"is a power which will not be resorted to unless the case be clear, decisive, and unavoidable"), *aff'd*, 196 U.S. 261 (1905).

With our branches of government, everyone has their role.  As Justice Kennedy commented,

> It must be remembered that, even where parties have no standing to sue, members of the Legislative and Executive Branches are not excused from making constitutional determinations in the regular course of their duties.  Government officials must make a conscious decision to obey the Constitution whether or not their acts can be challenged in a court of law and then must conform their actions to these principled determinations.

*Hein v. Freedom From Religion Found., Inc.*, 551 U.S. 587, 618 (2007) (Kennedy, J., concurring).

### 4.    Analysis

The title of SF 638 is "An Act Relating to State and Local Financing by Making Appropriations, Providing for Legal and Regulatory Responsibilities, Providing for Other Properly Related Matters," and effective dates and applicability provisions.  The subheadings throughout the fourteen divisions of the legislation reveal a number of subjects that arguably do not appear to be appropriations but seem to fall under the portion of the title "Providing for Legal and Regulatory Responsibilities" or "Providing for Other Properly Related Matters."  SF 638 does not appear to be a single-subject bill, and the second and third clauses of the title are vague categorical descriptions that do not disclose specific subject matters of various divisions of the bill.  But, our supreme court has explained:

> In determining whether the single subject requirement has been complied with, we construe the enactment liberally in favor of its constitutionality.  As a result, to be held unconstitutional, an act must encompass two or more dissimilar or discordant subjects that have no reasonable connection or relation to each other.  Further, when

> matters grouped as a single subject might more reasonably be classified as separate subjects, no violation occurs if these matters are nonetheless relevant to some single more broadly stated subject.

*State v. Iowa Dist. Ct.*, 410 N.W.2d 684, 686 (Iowa 1987) (internal citations omitted).

There are no factual allegations or claims that the amendment to SF 638 was offered and adopted to "consolidate[] votes of the advocates of each separate [division of SF 638], when no single measure [of SF 638] could have been passed on its own merits," nor that it was an "undesirable rider" attached to SF 638 because of its popularity or desirability. *See Godfrey*, 752 N.W.2d at 426 (citations omitted). Regardless of whether the title to SF 638 suggests more than a single subject, plaintiffs' claims of logrolling, fraud, and deceit are legal conclusions, but they have made no allegations of facts that have historically resulted in a finding of logrolling as that term is characterized in our case law. *See id.* at 426–27. While notice pleading would not normally require such allegations for a plaintiff with standing, the unique circumstances of this case and the request to waive standing require us to consider the omissions of such allegations.

As to the article III, section 29 provision requiring the subject of the bill to be in the title, and the suggestion the addition of HF 1321 to SF 638 required an amendment to the title, we consider the context. The introduction of HF 1321 was a substantially scaled-back version of the earlier bills that had failed to advance.[20]

---

[20] Iowa H. File 503, 88th Gen. Assembly, Reg. Sess. (Feb. 21, 2019), https://ww w.legis.iowa.gov/docs/publications/LGI/88/HF503.pdf; Iowa Sen. File 237, 88th G en. Assembly, Reg. Sess. (Mar. 13, 2019), https://www.legis.iowa.gov/legislation/ BillBook?ga=88&ba=sf 237.

The headings on HF 1321 clearly identified that one provision was about "Judicial Nominating Commission Modernization," and the other "Chief Justice Selection." The legislator-plaintiffs argue surprise, but the alleged surprise was the timing of the introduction of HF 1321, not the failure to adequately disclose its content. By the time the house approved SF 638, there is no allegation of surprise as to the contents of the bill. Upon the return of SF 638 to the senate, the headings of HF 1321 were divisions XIII and XIV clearly identifying the subject of each division, although the title to SF 638 was not amended to include those headings. To the extent the title of SF 638 did not precisely identify the Commissions and chief justice divisions, there were several divisions of SF 638 that arguably were not separately identified in the title of SF 638.[21] We know of no challenge to the divisions other than divisions XIII and XIV that were not separately identified in the title. It appears obvious this lawsuit, focusing only on those divisions, seeks court intervention to ultimately address the political issues surrounding certain aspects of the selection of judicial officers who serve in the judicial branch of our government resulting from the alleged constitutional violations.

---

[21] It would appear several divisions were intended to be encompassed in the title clause "Providing for Legal and Regulatory Responsibilities." For example, the creation of blackout special registration plates, gambling regulation, public utilities, and watershed management authorities are not reasonably categorized as appropriations or related matters but arguably fit under the legal and regulatory responsibilities clause. *See* 2019 Iowa Acts ch. 89, divs. VII, VIII, IX, XI. Thus, if the divisions concerning the Commission and the chief justice were also considered as "providing for legal and regulatory responsibilities," the divisions were not "surreptitiously passed with 'provisions incongruous with the subject proclaimed in the title.'" *Godfrey*, 752 N.W.2d at 427 (citation omitted). And, if so, the title to SF 638 would not have required amendment.

As illustrated above, *Godfrey* provides substantial guidance on how cases seeking a waiver of the ordinary standing requirements should be analyzed.[22]  *See* 752 N.W.2d at 424–28; *see also Alons*, 698 N.W.2d at 864–65; *Exira Cmty. Sch. Dist. v. State,* 512 N.W.2d 787, 790 (Iowa 1994).  The court's discussion in that case was focused on the facts of that case and why the court chose to *not* waive standing.  It was not an advisory opinion instructing lower courts on when they must waive traditional standing requirements.  The simple fact is no Iowa appellate case has ever waived traditional standing requirements because of an issue of great public importance.

We disagree with the claim that no other relief is available to the plaintiffs. Legislators are elected and operate in a political environment: they typically employ political remedies or responses to votes with which they disagree.  When faced with issues that are heavy-laden with politics in which a plaintiff satisfies traditional standing requirements, our duty is to exercise our jurisdiction and decide the issues appropriate for adjudication.  But when plaintiffs do not have standing, we should consider whether to avoid becoming embroiled in a case by exercising a waiver of standing requirements to reach an issue that might be better left to the political environment.

Under the facts of this case, there are other reasons to consider restraint. In a traditional standing analysis, a "plaintiff must establish a causal connection between the injury and the conduct complained of and that the injury is likely, as

---

[22] Waiver of traditional standing requirements requires consideration of numerous factors as outlined in *Godfrey*, and by implication requires the exercise of discretion—i.e., a judgment call, balancing a variety of factors, including judicial restraint.

opposed to merely speculative, to be redressed by a favorable decision." *Horsfield Materials*, 834 N.W.2d at 457–58 (citation omitted). When considering whether to waive standing, there is no requirement that the plaintiff has an injury. In fact, the point is that the injury is to the public and the plaintiff is allowed to proceed for the greater good in somewhat of a representative capacity. But, in the present case we should consider whether the court can redress the claimed injury to the public. Two judges on the court of appeals and one justice on the supreme court were appointed by Governor Reynolds pursuant to the provisions of SF 638. The Commission is in the process of preparing to nominate candidates from which Governor Reynolds will select another justice. If we were to waive traditional standing requirements after finding the issue is of great public importance, we would remand the case for further proceedings. Depending on the timing of existing variables, including further appeals, there could be additional members of the court of appeals and supreme court appointed before final resolution of this case. In the event plaintiffs ultimately prevailed, what would then be a meaningful redress? Would we be advancing the cause of the rule of law or only muddying the waters of highly political issues? How would the confidence of the public be impacted?

In the present case, we are being asked to waive longstanding requirements for standing to permit plaintiffs to have a court from the judicial branch of government rule on whether the legislative branch of government violated the constitution when it approved legislation directly impacting the judicial branch.[23]

---

[23] By contrast, in *Godfrey*, the plaintiff was seeking to protect individual rights of injured workers.

The impact on the plaintiffs, if any, is indirect and speculative. Furthermore, waiver of standing in this case would require the district court to resolve a conflict arising out of a challenge to the internal procedural workings of elected legislative bodies. The court in *Godfrey* identified judicial policies that "drive our application of standing and must be kept at the forefront as we consider circumstances to support an exception or waive of the standing requirement." 752 N.W.2d at 425–26. Among those policies are the need to ensure "that a real, concrete case exists to enable the court to feel, sense, and *properly weigh the actual consequences of its decision.*" *Id.* at 425 (emphasis added).

We have carefully reviewed applicable case law, the record presented to us, and the arguments made. We have considered the balance between our constitutional responsibilities to decide legal issues properly presented to us and the discipline necessary to exercise restraint to interfere with the other two branches of government. After weighing the competing roles and interests of all three branches of government and the actual consequences of our decision, we determine this is not the case in which we should first find an issue of such great public importance as to waive traditional standing requirements and allow plaintiffs to proceed. We agree with the district court that the standing requirement should not be waived in this case.

## IV. Conclusion.

We agree with the district court that the plaintiffs have not established any group has standing. We conclude the issues raised by the plaintiffs are not of such great public importance as to waive traditional standing requirements. We need not address the temporary-injunction issue. We affirm the district court.

**AFFIRMED.**

Bower, C.J., and Greer, J., concur; Danilson, S.J., and Potterfield, S.J., concur in part and dissent in part.

**DANILSON, Senior Judge** (concurring in part and dissenting in part).

I respectfully dissent in part. I agree with my colleagues in the majority that none of the groups before us—commissioners, lawyers, or legislators—have standing to challenge divisions XIII and XIV of SF 638. However, for the reasons explained below, I believe the issues raised by these plaintiffs are of great public importance and would apply the exception to standing.[24] I would reverse the district court's dismissal of their suit and remand for proceedings on the merits.

I believe we must address the issue of first impression, remain consistent with the pronouncements in *Godfrey*, and thereby extend the holding of *Godfrey*. I do not believe we should cede to the political overtones of the issue.

The majority correctly states the legislature may suspend their rules to pass legislation but cannot suspend the Iowa Constitution. Notwithstanding, the majority's decision permits it. The majority also suggests a different result would be "only muddying the waters of highly political issues." With all due respect, in my opinion any lower court will find the waters muddied in attempting to reconcile the principles in *Godfrey* with the majority's decision.

**A. Constitutional violations.** The majority begins by questioning whether either constitutional provision was violated in the passage of SF 638. In doing so, it encroaches into the merits of the claim and disregards the standard that we must consider the allegations in the petition as true. Instead of relying on the allegations

---

[24] I note the defendants acknowledged in their motion, appellate brief, and oral argument—and otherwise do not dispute—that our supreme court in *Godfrey v. State*, 752 N.W.2d 413, 425 (Iowa 2008), has recognized an exception to standing or that standing may be waived if citizens "seek to resolve certain questions of great public importance and interest in our system of government."

of the petition, the majority makes its own judgment on the merits after considering the various divisions of SF 638 and the title of the bill.

The majority touches upon the petition's allegations in respect to the violation of the single-subject rule, claiming the allegations of "logrolling, fraud, and deceit" are legal conclusions and there are no factual allegations of logrolling. However, in my view, the defendants make no such argument in their brief. In fact, the defendants do not raise any of the arguments made by the majority challenging the existence of the two constitutional violations, although in oral argument they denied any logrolling. Moreover, the plaintiffs need only claim logrolling, fraud, or deceit in their petition to bolster the importance of their argument the issue is of great public importance. *See Godfrey*, 752 N.W.2d at 427 (stating, "[t]he absence of an allegation or claim" of "fraud, surprise, personal and private gain, or other such evils . . . diminishes our need to intervene," and noting there was "no allegation that the provisions were purposely placed into one bill to engage in logrolling"). On the other hand, the facts alleged in the petition must sufficiently support the two constitutional violations, and the defendants do not claim otherwise.[25]

**B. Motives of plaintiffs.** The majority also criticizes the motives of the plaintiffs because they only challenged divisions XIII and XIV of SF 638 and no other potential divisions omitted in the title of the bill. Again, this not an argument

---

[25] The defendants also do not raise the sufficiency of the allegations in the separate, related appeal, *Duff v. Reynolds*, No. 19-1789, 2020 WL _____ (Iowa Ct. App. Feb. 19, 2020), also filed today. Moreover, during oral arguments in *Duff*, the defendants' counsel could not refute that the defendants failed to challenge the lack of sufficient facts in the petition to support the two constitutional violations.

or issue raised by the defendants and has no impact on the question of whether there is an issue of great public importance. I suspect but can only speculate that the plaintiffs opined that divisions XIII and XIV threatened the nature of state government as guaranteed by the Iowa Constitution more so than, for example, the division permitting black auto license plates. The only aspect of *Godfrey* remotely related to motive is whether the plaintiff is attempting to vindicate fraud or deceit as opposed to the internal workings of the legislative process. 752 N.W.2d at 427.

**C. Purpose of title requirement.** In my view, the majority also misconstrues the purpose of the title requirement in claiming there was only a timing issue (as opposed to surprise) because the legislators knew what was in SF 638 at the time of their vote. Although the legislators may have understood what was in the bill, the failure to identify the subject in the title could have prevented legislators' constituents, lobbyists, interested government officials, or other members of the public from having such knowledge. The purpose of the title requirement "is to provide reasonable notice of the purview of the act to the legislative members *and to the public*." *Id.* (emphasis added) (citing *Giles v. State*, 511 N.W.2d 622, 625 (Iowa 1994)).

**D. Concrete case.** One of the policies the majority recites from *Godfrey* is the need to ensure "that a real, concrete case exists to enable the court to feel, sense, and properly weigh the actual consequences of its decision." 752 N.W.2d at 425. This argument was never raised by the defendants and for good reason. The parties to this action have thoroughly argued and briefed the issues and are true adversaries.

**E. Other concerns.**  The majority expresses concerns about the judges who have been appointed pursuant to the newly-formed commission, a proper redress to the public, and how a different result may muddy political issues.  Yet the defendants' brief argues the opposite in stating, "the proper inquiry is not the underlying policy or its effect on our system or structure of government."  I submit the proper redress to the public is to invalidate divisions XIII and XIV and require the legislature to comply with the Iowa Constitution.  Certainly the citizens of the State of Iowa are entitled to the rights expounded in the Iowa Constitution.

**F. Issue of first impression.**  The majority has decided this is an issue best left to the political environment.  The majority also finds solace in the fact that no Iowa case has yet found the existence of an issue of great public importance to waive standing.  However, the fact the questioned legislation bears upon the judicial branch does not change our standard of review or our duties to address the issues and arguments properly presented by the parties.  Furthermore, our court frequently decides issues of first impression.  *See, e.g.*, *Standard Water Control Sys., Inc., v. Jones*, No. 17-0854, 2018 WL 739330, at *3 (Iowa Ct. App. Feb. 7, 2018) ("This case involves an extensive procedural history, including a matter of first impression . . . ."); *Rochford v. G.K. Dev., Inc.*, 845 N.W.2d 715, 718 (Iowa Ct. App. 2014) (finding "no Iowa case that addresses" the issue).

**G. Interference with other branches of government.**  The majority opinion also warns that courts should "avoid unnecessary interference" with the other branches of government.  As an intermediate appellate court, we have no say in the cases or issues before us.  We do not seek to decide constitutional questions or embroil ourselves in the roles of the other branches.  But when we

are assigned cases that implicate the actions of the other, co-equal branches of government, we should not shy from the application of sound reasoning in precedent. *See Godfrey*, 752 N.W.2d at 425 (noting "our doctrine of self-imposed restraint was not created to keep us from deciding critical public issues of the day").

Over forty years ago Justice Uhlenhopp, writing for the court, addressed the power of the judicial branch in relation to its co-equal branches of government, stating, "[T]he trend is away from the former completely hands-off doctrine when the charge is that a legislative body substantially violated a constitutional guarantee while exercising an express constitutional power." *Luse v. Wray*, 254 N.W.2d 324, 328 (Iowa 1977). In *Luse*, the Iowa Supreme Court concluded the courts do have the power to determine if the legislature acted contrary to the Iowa Constitution in resolving an election contest. *Id.*

Over 100 years ago, the Iowa Supreme Court invalidated a proposed amendment to the Iowa Constitution because the Iowa House of Representatives only entered the title and not the full proposed amendment in the House Journal. In reaching its decision the supreme court stated:

> If there are conclusions of the court authoritatively announced in [a] case which settle the present case, we ought to adhere to them, unless they are manifestly unsound; for in no class of cases coming before us ought we to so carefully guard against vacillation and uncertainty as in cases which involve a construction of the fundamental law of the state.

*State v. Brookhart*, 84 N.W. 1064, 1065 (Iowa 1901). Here, the majority's decision leads to vacillation and uncertainty in the enforceability of article III, section 29 of the Iowa Constitution.

**H. Principles authoritatively announced.** In my view, *Godfrey* provides sound principles authoritatively announced that can only lead to one conclusion—that a challenge based upon a title-requirement violation and a single-subject violation with allegations of fraud, deceit, and logrolling constitutes an issue of great public importance.[26]

First, in *Godfrey*, the court relied upon the fact that "there [was] no allegation that the provisions were purposely placed into one bill to engage in logrolling" in deciding not to apply the exception to standing.[27] 752 N.W.2d at 427. But here, the plaintiffs do allege purposeful logrolling. The majority claims the plaintiffs have made no allegations of facts to support a claim of logrolling. However as previously noted, although the two constitutional violations must be supported by factual allegations, the petition need only "allege" fraud, deceit, surprise, or logrolling.

---

[26] It could be argued that *Godfrey* does not constitute binding precedent that a violation of the title requirement constitutes an issue of great public importance because the supreme court did not have that challenge before it. But there is additional support for the principle that the announcements in *Godfrey* constitute binding authority. The supreme court has observed a distinction between obiter dictum (mere dictim) and judicial dictum. *Perfection Tire & Rubber Co. v. Kellogg-Mackay Equip. Co.*, 187 N.W. 32, 35 (Iowa 1922) (citing *Chase v. Am. Cartage Co.*, 186 N.W. 598, 599 (Wis. 1922)). In *Chase*, the Wisconsin Supreme Court explained, "[W]hen a court of last resort intentionally takes up, discusses, and decides a question germane to, though not necessarily decisive of, the controversy, such decision is not a dictum, but is a judicial act of the court which it will thereafter recognize as a binding decision." 186 N.W. at 599. Thus, judicial dictum is binding. *Perfection Tire & Rubber Co.*, 187 N.W. at 35 ("The binding force of a decision is coextensive with the facts upon which it is founded, and if correlated subject–matter is under discussion and decided, such decision is not mere obiter dictum.").

[27] Logrolling is the "practice of procuring diverse and unrelated matters to be passed as one 'omnibus' due to the consolidated votes of the advocates of each separate measure, when no single measure could have been passed on its own merits." *Godfrey*, 752 N.W.2d at 426 (internal quotation marks and citations omitted).

Here, the plaintiffs specifically allege logrolling by the violation of the single-subject rule. Moreover, the plaintiffs claim bills similar to division XIII were brought in both the house and senate without success earlier in the legislative session and noted that HF 1321, which contained divisions XIII and XIV, was filed as a last-minute amendment to the unrelated appropriations bill on the last day of the legislative session.[28] *Cf. id.* at 430 (Wiggins, J., dissenting) ("Logrolling is not only inducive of fraud, it also makes it difficult to ascertain whether the legislature would have passed either of the matters had they been voted on separately."). Unlike *Godfrey* where there were no allegations of fraud, deceit, surprise, or logrolling, these plaintiffs have substantially elevated the need to resolve the critical issue in this case.

Furthermore, the fact that divisions XIII and XIV were unrelated to the rest of the appropriations bill did not go unnoticed—at least in the house—as Representative Wolfe raised the issue with her colleagues and the speaker agreed with her objection.[29]

Second, the plaintiffs here, unlike the plaintiff in *Godfrey*, challenge the title requirement and maintain they are seeking "to vindicate any perpetration of fraud or deceit on the legislature or the public." 752 N.W.2d at 427 (noting "Godfrey does not seek to vindicate any perpetration of fraud or deceit on the legislature or the public that can occur by infirmities in the title of a bill"). The plaintiffs claim the amendment to SF 638 to include divisions XIII and XIV, which were not reflected

---

[28] This conclusion is premised upon the taking of judicial notice of legislative acts incorporated in footnote twenty-one of the majority's decision.

[29] Iowa H.J., 88th Gen. Assembly, Reg. Sess., 1057 (Apr. 27, 2019), https://www.legis.iowa.gov/docs/publications/HJNL/20190427_HJNL.pdf.

in the title, coupled with the short period of time between the amendment and passing of the bill, prevented constituents from being informed of and weighing in to their legislators about the provisions regarding the change to the commission and term and election of the chief justice. The court in *Godfrey*, in refusing to apply the newly recognized exception to standing, found it significant the plaintiff did not challenge the title provision. *See* 752 N.W.2d at 427. The court emphasized:

> Importantly, Godfrey does not challenge the title requirement of article III, section 29. . . . Thus, Godfrey does not seek to vindicate any perpetration of fraud or deceit on the legislature or the public that can occur by infirmities in the title of a bill, but seeks to uphold the internal workings of the legislative process that promotes and encourages legislators to understand and debate the merits of each separate subject. We believe this limited challenge by Godfrey plays a significant role in deciding whether or not to waive standing.
> . . . .
> The absence of an allegation or claim by Godfrey that implicates fraud, surprise, personal and private gain, or other such evils inconsistent with the democratic legislative process diminishes our need to intervene to determine if the legislature has violated a constitutional mandate.

*Id.*

The constitutional claims raised here, coupled with factual allegations that support them, are much more significant than the allegations raised in *Godfrey*. The title-requirement violation by itself alleges fraud and deceit upon the public and other members of the legislature. *See id.* And the single-subject rule with the claim of logrolling also constitutes allegations of fraud, deceit, and surprise. *Id.* at 427. The two rule requirements "are separate constitutional principles," but "they operate together to prevent greater harm than when the single subject requirement is the only violation claimed." *Id.* at 428 (emphasis added).

Additionally, in *Godfrey*, the legislation was the result of a special legislative session with a compromise proposal between the governor and General Assembly. Our facts reflect no joint effort or compromise, and the legislator-plaintiffs have a strong interest because they were forced to forego a vote on SF 638 to remain consistent with article III, section 29 of the Iowa Constitution.[30]

I also observe the majority in *Godfrey* believed it was important to have a principled approach to resolve the issue of great public importance. 752 N.W.2d at 425. And the dissent in *Godfrey* suggested a "principled and workable analysis" of the exception to standing. 752 N.W.2d at 429 (Wiggins, J., dissenting). As a part of the dissent's analysis, the claim must present "a clear threat to the essential nature of state government as guaranteed by the constitution." *Id.* at 430-31 (Wiggins, J., dissenting). The majority in *Godfrey* also refers to waiving standing "when the issue is of utmost importance and the constitutional protections are most needed." 752 N.W.2d at 427. Here, the legislature's effort to fix the term of the chief justice, the head of a co-equal branch of government, has been argued as an unconstitutional legislative encroachment upon the judicial branch and thus could constitute a threat to the nature of state government guaranteed to the citizens of Iowa by the Iowa Constitution.

**I. Conclusion.** Ordinarily, this court would not hesitate to follow the pronouncements of a leading case by our supreme court as the best predictor of how a decision should be reached. I believe this court should resolve this critical

---

[30] For example, Representative Wolfe stated she was "required to relinquish my rights under article III, section 29 of the Iowa Constitution in order to utilize my rights under article III, section 15 of the Iowa Constitution."

issue, as *Godfrey* does not state an issue of great public importance exists only in the absence of political overtones or must involve a non-controversial issue.

Thus, I would reverse the district court's dismissal of the plaintiffs' suit for lack of standing and remand for further proceedings on the merits of the plaintiffs' claims. Such a decision, finding an exception to the standing requirement, assures access to justice, provides certainty and consistency in the law, and assures our citizens that we will resolve critical issues regarding the state government guaranteed to them under the Iowa Constitution.

Potterfield, S.J., joins this partial dissent.